UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, *ex rel.*
SAIF HUSSAIN,

Plaintiff,

-v-

CDM SMITH, INC. and CDM
CONSTRUCTORS, INC.,

Defendants.

14-CV-9107 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This is a False Claims Act ("FCA") case involving U.S. disaster-relief funds.  The case's

lone remaining Defendant, CDM Constructors, Inc. ("CCI"), was a United States Government

contractor that led various rebuilding efforts in the wake of a devastating earthquake in Pakistan.

Relator Saif Hussain, a former employee of CCI, brings this suit on behalf of the United States,

alleging that CCI submitted false billing claims to the Government.  CCI has now filed a motion

for summary judgment.  (Dkt. No. 78.)  For the reasons that follow, CCI's motion is granted.

I.      **Background**

Familiarity with the background of this dispute is presumed based on the Court's prior

opinion on CCI's and its former co-Defendant CDM Smith, Inc.'s motion to dismiss.  *See United

States ex rel. Hussain v. CDM Smith, Inc.*, No. 14 Civ. 9107, 2017 WL 4326523, at *8 (S.D.N.Y.

Sept. 27, 2017).  The Court details here only those aspects of this case's factual and procedural

background relevant to the disposition of the instant motion.

A.      **Factual Background**

The following facts are taken from the parties' Local Rule 56.1 statements (Dkt. No. 87

("SUF")), and are not subject to genuine dispute unless otherwise noted.

## 1.    CCI's Contracts with USAID

In 2006, the U.S. Agency for International Development ("USAID") issued an Indefinite

Quantity Contract ("IQC")[1] to CCI in connection with USAID's Pakistan Earthquake

Reconstruction & Recovery Program ("PERRP").  (SUF ¶¶ 1–2; *see also* Dkt. No. 81-5 (CCI's

PERRP IQC).)  The IQC was intended to allow USAID to enlist CCI's assistance in the delivery

of U.S.-sponsored aid to Pakistan following a major earthquake that struck the country in 2005.

(SUF ¶ 2.)  In the years that followed, and pursuant to the terms of the IQC, USAID issued a

number of more specific and individually approved "task orders" to CCI in connection with

different PERRP projects.  (SUF ¶¶ 4, 7–8.)  CCI's performance under these initial PERRP task

orders is not at issue in the instant motion.

Beginning in 2011, the Government expanded its aid program to Pakistan and redubbed

the program the Pakistan Reconstruction Program ("PRP").  (SUF ¶¶ 9–10.)  To reflect the

program's changed focus, USAID modified its IQC with CCI so that the IQC would encompass

services beyond earthquake-related recovery, and so that USAID could issue task orders to CCI

related to damage caused by 2010 monsoon flooding in Pakistan, and also, at least according to

Hussain, some infrastructure projects entirely unrelated to disaster relief.  (SUF ¶ 9; *see also* Dkt.

No. 88-8 (amendment to CCI's IQC).)

It was under this modified version of the IQC that USAID issued to CCI the three task

orders relevant to the instant motion.  All three of these task orders were issued in the summer or

fall of 2011.  (SUF ¶¶ 17, 23, 32.)  The first of these task orders, referred to by the parties as

"Task Order 11-00006" or "TO6," was meant to supersede the various task orders previously

---

[1] An IQC is a type of contract the Government uses to establish a generalized agreement
with a contractor to provide a range of different supplies or services.  48 C.F.R. § 16.504.  An
IQC provides the framework under which the terms of subsequent and more specific contracts
for particular goods or services may be issued to the contractor.  *Id.*

awarded to CCI under PERRP, such that from that point forward TO6 covered all of CCI's remaining and still-unfinished earthquake-related projects. (SUF ¶ 13; *see also* Dkt. No. 81-7 (TO6).) The other two task orders at issue in this motion, referred to by the parties as "Task Order 11-00003" or "TO3" and "Task Order 11-00008" or "TO8," covered construction projects unrelated to the 2005 earthquake (SUF ¶¶ 14, 25, 34; *see also* Dkt. Nos. 81-8 (TO3), 81-9 (TO8).) More specifically, TO3 and TO8 each involved projects relating to the construction and rehabilitation of Pakistani universities and hospitals. (SUF ¶¶ 24, 33.)

Under the "Cost-Plus-Fixed Fee" ("CPFF")[2] terms of each of these three task orders, all CCI-employee time spent working on these task orders was both to be billable and in fact was billed to the Government. (SUF ¶ 16; *see also* Dkt. No. 88-5 at 3; Dkt. No. 88-6 at 3–4; Dkt. No. 88-7 at 4; Dkt. No. 82 ¶ 10; Dkt. No. 81-1 ("Hussain Depo.") at 133:4–10.) In other words, the parties do not genuinely dispute that CCI had agreed with USAID to, and in fact did, bill the Government for all of CCI's employees' labor time spent on these three task orders. (SUF. ¶ 16.) The foregoing is true notwithstanding the fact that two of the relevant task orders, namely TO3 and TO8, also included "firm-fixed-price" ("FFP")[3] subcomponents—meaning that TO3 and TO8 each included subcomponents that were required to be completed on a flat-fee basis, irrespective of labor costs incurred in completing those projects. (SUF ¶¶ 28, 37.) The reason

---

[2] A CPFF contract is one in which the Government provides the contractor with an upfront and fixed fee at the inception of the contract, and thereafter compensates the contractor at cost. 48 C.F.R. § 16.306. This type of contract places minimal risks on contractors, because the Government ultimately will bear the burden of unforeseen or excessive costs. *See id.*

[3] An FFP contract is one in which the Government provides the contractor with only a single flat fee for the agreed-upon service, regardless of the ultimate costs borne by the contractor under the contract. 48 C.F.R. § 16.202-1. This type of contract "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss," but it also provides "maximum incentive for the contractor to control costs and perform effectively . . . ." *Id.*

all CCI employee time spent on TO3 and TO8 remained billable to the Government, despite TO3 and TO8's FFP subcomponents, was that the FFP subcomponents of these two task orders exclusively covered construction work to be performed by outside subcontractors or the purchase of furniture and equipment. (SUF ¶¶ 29, 38; *see also* Dkt. No. 88-6 at 3–4; Dkt. No. 88-7 at 4.) Accordingly, CCI was by the very terms of its agreements with USAID unable to bill the Government for any of CCI's employees' time that was chargeable FFP subcomponents of these task orders, because these FFP subcomponents covered only the procurement of goods or services from subcontractors other than CCI. (SUF ¶¶ 30, 39; *see also* Dkt. No. 81-4 ("Hussain RFAs") Nos. 9, 15. (admitting that "CCI employee time could not be billed to FFP components of [TO3 and TO8]").)

Despite all of the foregoing, the parties dispute whether CCI employees billed any time spent on FFP subcomponents to the Government under the CPFF components. SUF ¶¶ 16, 21, 30, 39.) Hussain contends that CCI employees still ended up billing time under the CPFF components of TO3, TO6, and TO8 for time they actually spent completing tasks the Government had paid to have performed by the subcontractors under the FFP portions of its contracts with CCI. (SUF ¶¶ 16, 21, 30, 39; *see also* Hussain Depo. at 84:3–22; Dkt. No. 86 ("Hussain Decl.") ¶¶ 33, 41–42.) In support of this contention, Hussain cites portions of his own declaration and deposition testimony in which he recounted incidents from his time as an employee with CCI where he observed CCI bill for employee hours spent remedying or improving upon defective work that had already been charged to the Government on an FFP basis. (Hussain Depo. at 84:3–22; Hussain Decl. ¶¶ 33, 41–42.)

### 2. CCI's Billing Practices

In the course of fulfilling its obligations to USAID under TO3, TO6, and TO8, CCI often issued guidance to its employees instructing them to apportion their time billed across the three

relevant task orders in accordance with certain targeted proportions. (SUF ¶ 52; *see also, e.g.*, Dkt. Nos. 81-3 at 2 (suggesting that CCI employees aim to bill 6.25% of their time to TO6, 43.75% of their time to TO8, and 50% of their time to TO3 over May and June 2013).) CCI would frequently update these hours targets based on the status of each of its project's budgets. (SUF ¶ 52; *see also, e.g.*, Dkt. No. 81-3 at 2 (suggesting that by July 2013 CCI employees would need to shift their time away from TO6 and spend more time working on TO3 and TO8).) In addition, CCI often included as part of this guidance reminders to each of its employees that their own billing might need to deviate from these suggested targets depending on how much time they spent working on each particular task order in a given week. (SUF ¶ 52; *see also, e.g.*, Dkt. No. 81-3 at 3 ("[T]he labor charges may vary from time to time based on your actual work.").)

A CCI executive and Hussain have both testified that this rationing of CCI's employees' billing of their time across the three task orders was in some cases necessary given the generalized administrative nature of the work called for under each of the three task orders, and because the managerial and administrative work performed by many of CCI's employees at CCI's headquarters was often applicable to CCI's performance of its obligations under all three of the task orders. (SUF ¶ 50[4]; Dkt. No. 82 ¶¶ 17–19; Hussain Depo. at 91:17–92:11, 94:22–95:11.)

---

[4] Paragraph 50 of CCI's Local Rule 56.1 statement sets forth that CCI's "headquarters staff, including [Hussain], performed functions applicable to multiple Task Orders at the same time, and needed a method for allocating that time." (SUF ¶ 50.) To establish this fact, CCI cites, among other evidence, Hussain's own deposition testimony. (*Id.*)

Still, Hussain purports to dispute this fact, despite his having himself acknowledged both his personal use of and the propriety of this proportional billing policy in some circumstances, particularly given the generalized nature of some of CCI's administrative work for USAID. (*See id.*; *see also, e.g.*, Hussain Depo. at 91:17–92:11, 94:22–95:11, 126:15–24.) In purporting to dispute this fact, Hussain mostly cites federal regulations and Defense Contract Audit Agency guidance that he interprets as forbidding CCI's suggested practice of employing proportioned

The parties dispute the extent to which USAID may be said to have formally endorsed CCI's rationed-billing practice by issuing each of the three task orders to CCI. (SUF ¶ 51.) On the one hand, as CCI notes, CCI disclosed to USAID and explained in detail this proportional billing model when drafting each of the three task-order proposals it was required to provide to USAID as a prerequisite to its receipt of each of the three contracts. (*See, e.g.*, Dkt. No. 81-10 at 8–10; Dkt. No. 81-11 at 14–16, 26–34; Dkt. No. 81-12 at 16–17, 31–39.) But on the other hand, as Hussain notes, the terms of the resulting task orders eventually issued by USAID, although based on CCI's proposals, did not expressly incorporate or address this practice. (SUF ¶ 51; *see also* Hussain Decl. ¶ 65.) Hussain also disputes the extent to which CCI adopted its suggested

---

billing targets for work applicable to more than one task order. (SUF ¶ 50.) To the extent Hussain's dispute of the facts contained in paragraph 50 of CCI's Local Rule 56.1 statement is based on his contention that those facts amount to a violation of federal policies or regulations, he fails to point to record evidence sufficient to create a dispute of fact for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c). The only other record evidence Hussain cites in an attempt to dispute paragraph 50 of CCI's Local Rule 56.1 statement is a term of the 2006 IQC entered into by CCI and USAID providing a "provisional" mechanism for billing CCI's "indirect costs" (Dkt. No. 88-1 at 6)—but this "provisional" term of the IQC does not speak to the facts asserted in paragraph 50, which again, concern CCI's need to develop a method for billing for its employees' work that was in fact directly applicable to three specific task orders USAID had issued to CCI in 2011 under an amended version of the IQC (SUF ¶ 50).

"If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir. 2003); *see also Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (disregarding purported disputes of fact identified in plaintiffs' Local Rule 56.1 statement because plaintiffs' disputes were "not [based on] denials of the specific facts asserted by [d]efendant, or not supported by citations to admissible evidence in the record, or [were] contradicted by other admissible evidence in the record, or [were] improper legal arguments"). Here, Hussain has not only failed to point to admissible evidence in the record sufficient to controvert the factual assertion contained in paragraph 50 of CCI's Local Rule 56.1 statement, but has also admitted to those facts under oath during his deposition. Accordingly, paragraph 50 of CCI's Local Rule 56.1 statement is deemed admitted.

proportional billing model for the purpose of maximizing the profits available to it under the three task orders. (SUF ¶ 41.)

Regardless of the propriety of or the purposes underlying CCI's billing practices, the parties do not genuinely dispute that CCI ultimately completed its work for USAID under TO3, TO6, and TO8 within the final budgets USAID had allocated to CCI; in other words, the sum total of all of the invoices CCI charged to the Government for the three task orders was in each case less than the total amount that USAID had budgeted to CCI for them. (SUF ¶¶ 44–46.)

### B.    Procedural History

Hussain filed this action under seal on November 14, 2014, alleging violations of the FCA. (Dkt. No. 1.) The Court lifted the seal on this action on June 9, 2016. (Dkt. No. 5.) The operative complaint was filed on November 10, 2016. (Dkt. No. 31 ("SAC").) On December 2, 2016, CCI and its former co-Defendant, CDM Smith, Inc., filed a motion to dismiss the operative complaint, arguing among other things that Hussain's allegations were precluded by the FCA's public disclosure bar; that Hussain failed to state a claim upon which relief could be granted; that one of Hussain's claims was time-barred; and that CDM Smith, Inc. was not a proper defendant. (Dkt. Nos. 32–33.)

On September 27, 2017, the Court granted in part and denied in part the motion to dismiss. (Dkt. No. 54.) As is relevant here, the Court dismissed all of Hussain's FCA claims against CCI, save for: (1) Count One's factual falsity claims, brought pursuant to 31 U.S.C. § 3729(a)(1)(A), (2) Count One's implied certification claims, also brought pursuant to 31 U.S.C. § 3729(a)(1)(A), and (3) Count Two's false record claims, brought pursuant to 31 U.S.C. § 3729(a)(1)(B). (Dkt. No. 54 at 22; *see also* SAC ¶¶ 184–95 (Count One), ¶¶ 196–206 (Count Two).) The Court further held that these three claims would be allowed to proceed only to the extent that they were premised on CCI's allegedly false billing of employee time. (Dkt. No. 54

at 22.)  In so holding, the Court emphasized the Rule 9(b) requirement that Hussain plausibly allege that CCI had submitted specific false claims to the Government, and held that Hussain had met that burden only with respect to his allegations that CCI had knowingly shifted the billing of its employees' time for their work on maxed-out FFP contracts to CPFF contracts that were still under budget.  (*See* Dkt. No. 54 at 9–11, 14–17.)

In light of the limited scope of Hussain's claims that survived CCI's motion to dismiss, the parties consented to a bifurcated discovery process whereby the initial phase of discovery would be limited to certain threshold issues essential to Hussain's remaining claims.  (*See* Dkt. No. 61 at 2, Dkt. Nos. 62–63.)  The parties disagreed, however, on "the question of what, specifically, constitute[d a] threshold issue at [the post-motion-to-dismiss] juncture in the action."  (Dkt. No. 63 at 1.)  CCI argued that discovery in the initial phase ought to be limited to "the contracts at issue," namely the three task orders (TO3, TO6, and TO8) that Hussain had cited to and attached to his Second Amended Complaint as the specific contracts under which CCI had impermissibly shifted billing from the FFP contracts to the CPFF contracts.  (Dkt. No. 62; *see also* Dkt. No. 69 at 3–5.)  Hussain countered that his allegations that had survived CCI's motion to dismiss actually covered a broader scope of alleged conduct, explaining that:

> [T]he fraudulent shifting of time billed throughout [CCI's] various USAID contracts cannot simply be limited to the transfer of itemized time entries between *different types* of contracts such as its [FFP] contracts, [CPFF] contracts, and [IQC] contracts.  Rather, as Mr. Hussain has articulated, the shifting of billable time occurred *by and among* the various contracts. . . .

(Dkt. No. 63 at 1; *see also* Dkt. No. 69 at 9.)

At an ensuing conference held before the Court on December 18, 2017, counsel for Hussain sought leave to file a third amended complaint in order to provide the Court and CCI with "further details . . . which could highlight the issues" Hussain wanted to be included as part of the first phase of discovery.  (Dkt. No. 69 at 11.)  The Court instead instructed the parties to

proceed with their agreed-upon bifurcated discovery and to "begin the discovery [process with the contracts] that everyone agrees is appropriate discovery." (Dkt. No. 69 at 13.) The Court then instructed Hussain's counsel that if Hussain wanted to broaden the scope of claims at issue in this suit, then he would need to seek leave to file a new pleading in a separate motion. (*Id.*) Hussain subsequently filed a motion for leave to file a third amended complaint in order to "further expound upon particular factual elements of those allegations already pleaded in an effort to provide greater clarity and specificity for his causes of action" (Dkt. No. 65 at 1), and the Court denied that motion on January 31, 2018, on grounds of futility, undue delay, and undue prejudice to CCI (Dkt. No. 71).

Counsel for the parties next appeared before the Court on May 11, 2018, after the close of the initial phase of discovery. (*See* Dkt. No. 76.) At the conference, counsel for the parties each renewed their competing perspectives on the nature and scope of Hussain's claims that had survived the motion to dismiss: Counsel for CCI again contended that Hussain's only remaining claims related to cost-shifting from the FFP component to the CPFF components of TO3, TO6, and TO8 (Dkt. No. 76 at 3–5, 10), while counsel for Hussain professed the "view that the breadth of the claims outlined in the complaint exceeds just that small issue of transfers of the firm fixed price contracts and cost plus fixed contracts," that "small issue" being one that Hussain had pleaded only for "illustrative purposes" (Dkt. No. 76 at 6–7). The Court, at CCI's request, permitted the parties to file motions for summary judgment with respect to the "small issue" of whether CCI had engaged in fraudulent cost-shifting between the CPFF and FFP components of TO3, TO6, and TO8. (Dkt. No. 76 at 14–15.) In doing so, the Court explained that it "tend[ed] toward the view that because [this is] a fraud case and the pleading must be with particularity[,] the particular examples of fraud [cited in the complaint] are essentially what's likely to be at

issue in the case." (Dkt. No. 76 at 15.) However, the Court opted to delay formal resolution of the parties' disagreement as to whether that issue constituted Hussain's sole theory of liability to have survived CCI's motion to dismiss until after the Court had reviewed the parties' evidence produced in connection with summary judgment motions. (*Id.*)

On May 23, 2018, CCI moved for summary judgment with respect to what it contends to be all of Hussain's surviving claims. (Dkt. Nos. 78–79.) Hussain opposed CCI's motion on July 9, 2018 (Dkt. No. 85), and CCI filed a reply brief in further support of its motion on August 3, 2018 (Dkt. No. 89). The Court is now prepared to rule on CCI's motion.

## II.    Legal Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

Where the nonmoving party will bear the burden of proof at trial, the moving party may establish the propriety of summary judgment by "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). Once the moving party has done so, the burden shifts to "the nonmoving party [to] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial" on each essential element of their claims. *Id.*

To defeat summary judgment, the nonmoving party cannot rely merely on "some metaphysical doubt as to the material facts" or on "conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).

Instead, the nonmoving party must point to concrete "evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In evaluating whether the nonmoving party has met their burden, courts are to construe the evidence in the light most favorable to the nonmoving party and draw all inferences in their favor, asking "not whether . . . the evidence unmistakably favors one[] side or the other but whether a fair-minded jury *could* return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 553 (emphasis added) (quoting *Anderson*, 477 U.S. at 252).

## III.    Discussion

"The False Claims Act, 31 U.S.C. § 3729 *et seq.*, imposes significant penalties on those who defraud the Government." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016). "Congress has repeatedly amended the [FCA], but its focus remains on those who present or directly induce the submission of false or fraudulent claims." *Id.* at 1996. "Defendants are subjected to treble damages plus civil penalties of up to $10,000 per false claim." *Id.*[5]

The primary question raised by CCI's motion for summary judgment is whether Hussain has produced evidence relating to CCI's cost-shifting among the FFP and CPFF portions of TO3, TO6, and TO8 sufficient to support the following three claims: (1) Count One's factual falsity claims, brought pursuant to 31 U.S.C. § 3729(a)(1)(A); (2) Count One's implied certification claims, also brought pursuant to 31 U.S.C. § 3729(a)(1)(A); and (3) Count Two's false record

---

[5] As the Court noted in its prior opinion on CCI's motion to dismiss, this brief summary, while sufficient for purposes of this case, is an oversimplification of the "precedential minefield" that is the universe of the FCA case law. (*See* Dkt. No. 54 at 6 n.1.) The Court provides below additional background regarding those aspects of Hussain's FCA claims most relevant to the instant motion.

claims, brought pursuant to 31 U.S.C. § 3729(a)(1)(B). (*See* Dkt. No. 79 at 1–2.) The Court addresses CCI's motion with respect to each of these claims in turn.[6]

## A. Count One – Factually False Claims

The Court first addresses CCI's motion for summary judgment with respect to Hussain's Count One factual falsity claim brought pursuant to 31 U.S.C. § 3729(a)(1)(A). This provision of the FCA imposes liability where a defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

Allegations of "false [or fraudulent] claims . . . can fall into two main categories: factually false claims and legally false claims." *See United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 810 (S.D.N.Y 2017), *rev'd on other grounds*, 899 F.3d 163 (2d Cir. 2018). Hussain's first, simpler theory of Count One liability is simply that CCI sent the government fraudulent bills. In FCA parlance, this is called a "factually false claim[]." *Id.* "Factually false claims are those where a contractor supplies an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided,—in other words, the contractor bills for something it did not provide." *United States ex rel. Kirk v. Schindler Elevator Corp.*, 130 F. Supp. 3d 866, 874 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Bishop v. Wells Fargo & Co.*, 823 F.3d 35, 43 (2d Cir. 2016), *vacated on other grounds*, 137 S. Ct. 1067 (2017). To survive summary judgment, an FCA claimant must identify

---

[6] To the extent that Hussain seeks to introduce new claims or reintroduce already dismissed claims at the summary judgment stage, his attempts to do so run afoul of the principles underlying Rule 9(b). *See, e.g.*, *Hood v. Dryvit Sys., Inc.*, No. 04 Civ. 3141, 2005 WL 3005612 (E.D. Ill. Nov. 8, 2005) ("Plaintiff's Brief in Opposition to Summary Judgment . . . is an insufficient means by which to satisfy the requirement of Rule 9(b). Fraud must be alleged with particularly in the *pleadings*; that is, a complaint, answer, reply to a counterclaim, or answer to a cross-claim. Anything else, including Plaintiff's Brief in Opposition, is merely a motion or paper. . . . Plaintiff cannot rely on his opposition brief to add specificity to allegations in the Complaint which should have been pled with particularity at the outset and which, even after discovery, the facts do not support.").

particular false claims that have submitted to the Government. *See United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 440 (3d Cir. 2004) ("Without proof of an actual claim, there is no issue of material fact to be decided by a jury. [A] theory that the claims 'must have been' submitted cannot survive a motion for summary judgment.").

CCI moves for summary judgment on a number of the elements of Hussain's factual falsity claims, but the Court need address only one: CCI's contention that Hussain has not produced evidence sufficient to prove the factual falsity of any of CCI's particular claims submitted to the Government. (Dkt. No. 79 at 10–13.) Here, Hussain advances two theories as to why CCI's claims are factually false: (1) that CCI improperly billed employee time that was spent on FFP components of its contracts to the CPFF components of the task orders; and (2) that CCI billed its employee time across the three CPFF task orders based on a formula, instead of in accordance with the actual amount of time its employees spent on each of the task orders. (Dkt. No. 85 at 17.) The Court examines each theory in turn.

With regard to the first theory, the Court permitted Hussain to proceed to discovery based on his allegation that when "he or other employees worked on [FFP] contracts, [CCI] would fraudulently bill his time to [CPFF] contracts in order to pad its billings." (Dkt. No. 54 at 10.) CCI now asserts that "[t]he time-shifting scheme alleged in the SAC . . . is unsustainable as a matter of law, because the alleged reallocation of CCI employee time from FFP to CPFF contracts could not have occurred." (*Id.*) In addition, CCI also argues that Hussain has failed to adduce enough evidence to support his allegations and thereby create a triable issue. (Dkt. No. 79 at 12–13.) The Court agrees.

As the Court has already discussed, the parties do not genuinely dispute that CCI was by the very terms of its agreements with USAID unable to bill for any employee time spent working

on the FFP subcomponents of any of these three task orders.  (SUF ¶¶ 30, 39; *see also* Hussain

RFAs Nos. 9, 15. (admitting that "CCI employee time could not be billed to FFP components of

[TO3 and TO8]").)  Instead, under the plain terms of each of the three task orders at issue in this

motion, all CCI-employee labor was both to be billable and in fact was billed to the Government

exclusively on a CPFF basis.  (SUF ¶ 16; *see also* Dkt. No. 82 ¶ 10, Dkt. No. 81-1 ("Hussain

Depo.") at 133:4–10.)  Hussain thus now concedes in opposing CCI's motion that CCI has in fact

"establish[ed] that its employee labor charges could not, *per se*, be billed directly to its FFP

contracts."  (Dkt. No. 85 at 15.)

Still, Hussain contends that CCI employees ended up charging the Government across the

CPFF components of TO3, TO6, and TO8 for their work actually spent completing tasks the

Government paid to have completed by others under the FFP portions of its contracts with CCI.

(SUF ¶¶ 16, 21, 30, 39; *see also* Hussain Depo. at 84:6–22; Dkt. No. 86 ("Hussain Decl.") ¶¶ 33,

41–42.)  In support of this contention, Hussain cites portions of his own declaration and

deposition testimony in which he recounted incidents from his time as an employee with CCI

where he observed CCI bill the Government for employee time spent remedying or improving

upon defective work that had already been charged to the Government on an FFP basis.  (*See*

Hussain Depo. at 84:6–22; Hussain Decl. ¶¶ 33, 41–42.)

Viewing all of the evidence in the record in the light most favorable to Hussain, the Court

concludes that he has still failed to produce evidence in support of this theory of factual falsity

sufficient to defeat summary judgment.  This is because the record contains no evidence of any

"specific false claims . . . for [CPFF] reimbursements [that] were submitted to the government."

(Dkt. No. 54 at 11.)  Indeed, while Hussain testified about various project sites at which he

observed CCI bill for employee time spent remedying defective work by FFP subcontractors (*see*

Hussain Decl. ¶¶ 33, 39, 41–42), Hussain does not point to any single specific hour of work

billed by CCI that he contends was spent on tasks that the Government had already paid for on

an FFP basis. To the contrary, Hussain himself has certified to the accuracy of each of the

hundreds of pages of CCI's billing statements submitted to the Government for reimbursement

that are reproduced in the summary judgment record. (*See, e.g.*, Dkt. Nos 31-8–31-11, 88-14;

*see also* Hussain RFAs Nos. 1–5 (admitting that Hussain had previously certified the accuracy of

each of these pay statements).)

Thus, even crediting as true Hussain's generalized testimony regarding CCI's

"underlying fraudulent activity" at these job sites,[7] this evidence is insufficient to support his

FCA factual falsity claims, because the "central question in False Claims Act cases is whether

the defendant ever presented a 'false or fraudulent claim' to the government." *United States ex

rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (quoting *Harrison

v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir. 1999)). A number of courts of

appeals have required FCA claimants to "come to court with a claim in hand or with sufficiently

detailed circumstantial evidence to establish that the defendant actually submitted a false claim"

to defeat summary judgment, *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d

995, 1003 (9th Cir. 2002), for "[w]ithout proof of an actual [false] claim, there is no issue of

---

[7] Notably, Hussain's testimony is also contradicted by some of his own Rule 36 admissions, such as his admitting to having never himself actually billed the Government for work on an FFP component of one of CCI's task orders with USAID (Hussain RFAs No. 20), and his admitting to having certified the accuracy of every one of the hundreds of billing statements in the record while he was still with CCI (Hussain RFAs Nos. 1–5). This is yet another reason why Hussain's declaration and deposition testimony are insufficient for purposes of defeating CCI's motion for summary judgment. *See Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.").

material fact to be decided by a jury," *Omnicare Inc.*, 382 F.3d at 440. Hussain's non-specific and conclusory testimony is insufficient to meet this burden. Instead, his "failure to present [evidence of any] actual false claim submitted to the government [is] fatal to" this theory of liability. *Aflatooni*, 314 F.3d at 1003.

The Court turns now to Hussain's second theory of factual falsity, which is premised on CCI's practice of billing employee time across the CPFF portions of each of the task orders in accordance with a preset formula. Again, the nature of a CPFF contract is that the Government agrees to pay for all costs incurred by the contractor in performing its obligations under the contract. 48 C.F.R. § 16.306. This second theory is materially different from Hussain's theory of factual falsity that survived CCI's motion to dismiss, a theory that was premised on CCI's shifting of billing from FFP to CPFF contracts. (*See* Dkt. No. 54 at 10–11.) That is because unlike Hussain's initial theory of factual falsity, which was premised on cross-billing between FFP and CPFF contracts, Hussain's new CPFF-specific theory of factual falsity involves CCI billing the Government only for CCI's work on contracts for which USAID had in fact agreed to pay for all CCI employee time. In other words, under this theory, any hour of work for which CCI billed on a CPFF basis was an hour of the work that the Government had agreed to pay for on a CPFF basis. Accordingly, this theory cannot support the inference that CCI "bill[ed] for something it did not provide," *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 114 (2d Cir. 2010), *rev'd on other grounds*, 563 U.S. 401 (2011), because all CCI did under this theory was "provide[] the government with . . . services it contracted for," *Kirk*, 130 F. Supp. 3d at 874. To the extent that CCI's practice of billing for any work actually performed under the contracts in accordance with preset proportions misleadingly failed to disclose CCI's noncompliance with its legal obligation to maintain more precise billing records, that

noncompliance is properly addressed in connection with Hussain's legal falsity claims. It does not show that CCI falsely billed the Government for work that the Government did not ask for or that CCI did not in fact provide.

Perhaps realizing that he has failed to meet his burden, Hussain contends that CCI's motion cannot be granted because CCI has failed to "sufficiently demonstrate that [the] practice of 'selective recording' did not occur." (Dkt. No. 85 at 21; *see also id.* at 15 ("Defendant cannot demonstrate that its Pakistan Project billing procedures adhered to the terms of the IQC [or] the task orders issued thereunder . . . .").) But CCI need not demonstrate anything at this stage. Instead, CCI may establish the propriety of summary judgment simply by "point[ing] to a lack of evidence to go to the trier of fact on an essential element of [Hussain's factual falsity] claim." *Jaramillo*, 536 F.3d at 145. CCI has done just that, so the burden is now on Hussain, as the "the nonmoving party[, to] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial" on his claim that CCI's selective recording and fraudulent shifting of employee hours across CPFF and FFP contracts resulted in specific factually false claims being submitted to the Government. *Id.* Having had the benefit of discovery, Hussain has failed to do so. In the absence of any evidence of CCI having ever in fact billed the Government under a CPFF contract for work relevant to CCI's labor obligations under an FFP contract, the Court cannot conclude that Hussain has produced evidence sufficient to demonstrate that CCI submitted factually false claims to the Government in violation of 31 U.S.C. § 3729(a)(1)(A). CCI is therefore entitled to summary judgment on Hussain's surviving factual falsity claims.

### B. Count One—Legally False Claims

Hussain also brings a "legal falsity" claim under 31 U.S.C. § 3729(a)(1)(A). Unlike factually false claims, a claim is *legally* false if it makes "a false representation of compliance with a federal statute or regulation or a prescribed contractual term." *Mikes v. Straus,* 274 F.3d

687, 696–97 (2d Cir. 2001), *abrogated on other grounds by Escobar*, 136 S. Ct. 1989.

Essentially, a legally false claim involves a defendant's telling the Government that it complied with a legal or contractual requirement, when it really did not. The Court has previously permitted Hussain to proceed with his legal falsity claim only to the extent he can demonstrate a false "implied certification." (Dkt. No. 54 at 12–14.) As the Supreme Court recently explained, a defendant can be liable under the "implied false certification theory" where "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements . . . [that] render the defendant's representations misleading with respect to the goods or services provided." *Escobar*, 136 S. Ct. at 1999. To assert an implied certification claim after *Escobar*, a plaintiff must allege that (1) the defendant made specific representations about goods or services, (2) the defendant failed to disclose noncompliance with a legal or contractual requirement, (3) the omission renders the representation misleading with respect to the goods or services provided, (4) the omission is material to the government's payment decision, and (5) the defendant acted knowingly. *See id.* at 1999–2004.

CCI moves for summary judgment on three of the foregoing elements of Hussain's implied certification claims, arguing that Hussain has failed to produce evidence sufficient to show: (1) legal falsity, *i.e.*, CCI's noncompliance with any of its legal or contractual obligations (Dkt. No. 79 at 10–13); (2) materiality (Dkt. No. 79 at 17–18); and (3) that CCI acted with knowledge (Dkt. No. 79 at 18–19).

The Court permitted Hussain to proceed to discovery on his legal falsity claims based on his allegations that CCI had engaged in cost shifting between FFP and CPFF contracts. (*See* Dkt. No. 54 at 14–16.) Having now had the benefit of discovery, Hussain fails to provide sufficient support for this theory of legal falsity. This is because, as the Court has already discussed, under

the CPFF terms of each of the three task orders at issue in the instant motion, all CCI-employee labor was both to be billable and in fact was billed to the Government on an exclusively CPFF basis. (SUF ¶ 16; *see also* Dkt. No. 82 ¶ 10, Dkt. No. 81-1 ("Hussain Depo.") at 133:4–10.) And CCI was by the very terms of its agreements with USAID unable to bill for any of its employees' time spent working on the FFP subcomponents of the task orders, because these subcomponents covered only the procurement of goods or services from subcontractors other than CCI. (SUF ¶¶ 30, 39; *see also* Hussain RFAs Nos. 9, 15. (admitting that "CCI employee time could not be billed to FFP components of [TO3 and TO8]").) Finally, having had the benefit of discovery on this theory of liability, Hussain fails to identify specific billing records submitted to the Government in which CCI billed the Government on a CPFF basis for work on FFP contracts. Accordingly, this theory of legal falsity fails.

Again, Hussain attempts to subtly shift the basis of his surviving implied certification claims, now arguing that CCI's methods of billing for its work under the three CPFF contracts at issue ran afoul of certain federal regulations and Defense Contract Audit Agency guidance. (*See* Dkt. No. 85 at 22–23.) Hussain attempts to point to federal regulations and Defense Contract Audit Agency guidance that he argues forbids CCI's formulaic mechanism for billing its employees work across multiple CPFF contracts. (*See generally* SUF ¶ 50.[8])

Hussain's CPFF-specific theory of legal falsity appears to be at odds with the only theory of legal falsity on which the Court has allowed Hussain to proceed in this case. (*See* Dkt. No. 54

---

[8] As CCI notes, some of the evidence cited by Hussain in support of this new contention was never filed on the public docket, and it has never been submitted to the Court. (*See* Dkt. No. 89 at 7 n.4; *see also, e.g.*, Dkt. Nos. 88-27, 88-37.) However, for the reasons the Court explores below, even assuming *arguendo* that CCI's proportioned billing practice did run afoul of certain of the Government's requirements of policies with which CCI had implicitly certified its compliance, Hussain has failed to adduce evidence sufficient to show that such a practice was material to the Government's decision to pay CCI.

at 15–16 (holding that Hussain could state a false implied certification claim if he could prove that CCI "shifted time from [FFP] to [CPFF] contracts," because if CCI "was improperly shifting billables from [FFP] to [CPFF] contracts, that information would be material to the Government's payment decision." (internal quotation marks omitted)).)  But even if the Court were willing to entertain Hussain's new theory that CCI's shifting of employee hours among only CPFF contracts resulted in a false implied certification of compliance with the Government's accounting requirements, Hussain still has failed to produce evidence sufficient to show that any shifting of employee hours across the three CPFF task orders was "material to the Government's payment decision."  *Escobar*, 136 S. Ct. at 2002.  Accordingly, Hussain's new CPFF-specific theory of false implied certification also fails.

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."  *Escobar*, 136 S. Ct. at 2002.  The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  The Supreme Court in *Escobar* emphasized that this materiality standard is "demanding."  *Escobar*, 136 S. Ct. at 2003.  The *Escobar* Court explained:

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.  Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.*  The Second Circuit, in discussing *Escobar*'s holding that "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation," highlighted that

"proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Bishop*, 870 F.3d at 107 (quoting *Escobar*, 136 S. Ct. at 2002–03). But the Second Circuit also cautioned district courts to be mindful that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.* (quoting *Escobar*, 136 S. Ct. at 2003).

Unrebutted evidence in the summary judgment record confirms the Government's longstanding awareness of CCI's proportional billing practice. Even if this policy ran afoul of federal regulations or guidance, then, this noncompliance could not have been "material to the Government's payment decision." *Escobar*, 136 S. Ct. at 2002. Specifically, CCI has produced unrebutted evidence showing that it disclosed this proportional billing policy to USAID at least three separate times, doing so as part of the proposals CCI provided to USAID prior to CCI's receipt of final versions of each of the three task orders at issue. (*See* Dkt. No. 81-10 at 8–10; Dkt. No. 81-11 at 14–16, 26–34; Dkt. No. 81-12 at 16–17, 31–39.) Hussain does not dispute that this was the case. Although he emphasizes that the resulting task orders eventually issued by USAID did not expressly incorporate or address this practice (SUF ¶ 51; *see also* Hussain Decl. ¶ 65), Hussain does not contend that the Government ever refused to issue a task order to CCI or refused payment to CCI under any of the CPFF task orders on this basis. Accordingly, there is no dispute that even after CCI's repeated disclosure of its practice of billing the Government for its employees' work in accordance with certain preset proportions, the Government continued to "pa[y each of CCI's] claim[s] in full." *Escobar*, 136 S. Ct. at 2003. And the fact that the Government continued to issue new task orders to CCI as CCI repeatedly included this practice

as part of its proposals demonstrates that the Government "signaled no change in position" as CCI continued to pursue this practice. *Id.* at 2004. CCI has thus produced "very strong evidence that [any] requirements" that it may have violated by pursuing this proportional policy were "not material" to the Government's decision to pay CCI, evidence that Hussain does not dispute. *Id.*

In attempting to rebut this evidence, Hussain simply repeats his assertion that CCI's proportional billing policy was fundamentally noncompliant with its accounting obligations. (Dkt. No. 85 at 22–25.) But the Supreme Court in *Escobar* expressly rejected the possibility of making a showing of the materiality of a false implied certification solely on the basis of the claimant's possible noncompliance with some provision of the Code of Federal Regulations:

> [I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material. The False Claims Act does not adopt such an extraordinarily expansive view of liability.

*Escobar*, 136 S. Ct. at 2004. Other than Hussain's evidence showing that CCI's billing policy may have run afoul of certain federal regulations, he has produced no evidence showing that this particular form of noncompliance would have had any "effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Bishop*, 870 F.3d at 107 (quoting *Escobar*, 136 S. Ct. at 2002). His failure to do so warrants summary judgment on the materiality element of his implied certification claims.[9]

_____

[9] The parties appear to agree that the materiality requirement applies with equal force to Hussain's factual falsity and legal falsity claims. (*Compare* Dkt. No. 79 at 18 n.7 *with* Dkt. No. 85 at 24.) However, "[s]ince *Escobar*, there is uncertainty as to whether the decision's materiality standard applies to all FCA claims brought under § 3729(a)(1)(A) [or] only a subset of claims (*i.e.*, it applies to theories of legal falsity but not factual falsity)." *United States v. Strock*, No. 15 Civ. 887, 2018 WL 647471, at *11 (W.D.N.Y. Jan. 31, 2018) (collecting cases). At least one court in this District has applied the *Escobar* materiality standard to Section 3729(a)(1)(A) claims irrespective of "[w]hether [those claims are] asserted on a theory of factual falsity or legal falsity." *United States ex rel. Forcier v. Comput. Scis. Corp.*, No. 12 Civ. 1750,

*  *  *

In sum, Hussain has failed to produce evidence sufficient to support his original theory of implied legal falsity regarding CCI's billing across FFP and CPFF contracts, and Hussain's new theory of implied legal falsity premised on CCI's proportional billing among CPFF contracts, whether or not at issue in this litigation or even provable based on the evidence before the Court on summary judgment, fails to satisfy the materiality standard set out for such claims by the Supreme Court in *Escobar*, 136 S. Ct. at 2002–04.  CCI is therefore entitled to summary judgment on Hussain's implied certification claim.

### C.    Count Two—False Record or Statement Material to a False or Fraudulent Claim

The Court now turns to CCI's motion for summary judgment with respect to Hussain's lone remaining claim, which is premised on Hussain's allegations of CCI's having made a false record or statement material to a false or fraudulent claim, brought pursuant to 31 U.S.C. § 3729(a)(1)(B).  This provision of the FCA imposes liability where a defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  *Id*.  "To prove a claim under this subsection, a plaintiff must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim."  *United States ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).  Essentially, this subsection contains a "double falsity" requirement—the plaintiff must plead both a false statement and a corresponding false claim.  *Id.*; *see also Wood*, 246 F. Supp. 3d at 821.

---

2017 WL 3616665, at *7 (S.D.N.Y. Aug. 10, 2017).  The Court does not reach this question, because Hussain's factual falsity claims have been dismissed on separate grounds.  However, to the extent Hussain is also required to demonstrate materiality in connection with his factual falsity claim premised on CCI's selective billing among CPFF contracts, Hussain's failure to do so provides another basis for dismissal of that claim.

As the Court explained in connection with CCI's motion to dismiss (Dkt. No. 54 at 16–17), courts generally treat claims brought under 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) together, as their elements overlap significantly. *See, e.g.*, *Wood*, 246 F. Supp. 3d at 821; *Kester*, 23 F. Supp. 3d at 252–53. Here, since Hussain has failed to produce evidence sufficient to show that CCI submitted a false claim, *see supra* Sections III.A., III.B., he has also necessarily failed to produce evidence sufficient to show that CCI made a false record or statement material to a false or fraudulent claim. Accordingly, CCI is entitled to summary judgment on Count Two.

## IV. Conclusion

CCI's motion for summary judgment is GRANTED. CCI is entitled to summary judgment with respect to all three of Hussain's remaining claims in this action, namely: (1) Count One's factual falsity claims, (2) Count One's implied certification claims, and (3) Count Two's false record claims. Because these are the only claims Hussain pleaded with sufficient specificity to survive CCI's motion to dismiss, Hussain has no remaining claims.

The Clerk of Court is directed to close the motion at Docket Number 78 and to close this case.

SO ORDERED.

Dated: March 29, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge